UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CURTIS STEWART, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.  1:18 CV 229 ACL |
| ANN PRECYTHE, et al., | ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

Plaintiff Curtis Stewart, currently an inmate at the Eastern Reception Diagnostic and Correctional Center ("ERDC"), brought this action *pro se* under 42 U.S.C. § 1983, alleging the violation of his constitutional rights during his incarceration at the Southeast Correctional Center in Charleston, Missouri ("SECC").  The action was originally filed in the Circuit Court of Mississippi County, Missouri, and was removed to this Court by Defendants.  (Doc. 2.)

This matter is before the Court on the Motion for Summary Judgment of Defendants Ann Precythe, Trevor Proffer, Micha Wyatt, Charlie Brown, Sergeant Gordon, Hollie Dysinger, and William Pettus ("MDOC Defendants") (Doc. 26), and the separate Motion for Summary Judgment of Defendant Cody Stanley, LPN ("Defendant Stanley") (Doc. 50).  These matters are fully briefed and ripe for disposition.

**I.      Background**

In his Complaint, Stewart seeks monetary and declaratory relief against Defendant Ann Precythe, in her individual and official capacity as Director of the Missouri Department of Corrections ("MDOC"); and against the following SECC employees in their individual

capacities: William Pettus, Trevor Proffer, Charlie Brown, Micha Wyatt, Sergeant Gordon, and Hollie Dysinger.  Stewart alleges that the Defendant corrections officers ("CO Defendants") used excessive force when securing him during a cell transfer on two different occasions.  He further contends that the CO Defendants and Defendant Stanley were deliberately indifferent to his serious medical needs during and after the cell transfer incidents.  Stewart alleges that Defendant Precythe established and authorized the MDOC policy of securing inmates during cell transfers, which is unconstitutional.

## II.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.  *Matsushita 333Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties."  *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004).  "Instead, the dispute must be outcome determinative under prevailing law."  *Mosley v. City of Northwoods,* 415 F.3d 908, 910-11 (8th Cir. 2005) (internal quotations omitted).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Stewart's status as a *pro se* prisoner does not excuse him from responding to Defendants' Motions "with specific factual support for his claims to avoid summary

judgment," or from complying with local rules. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001).

**III. Facts**[1]

The facts of each incident are set forth below.[2]

At the time of both of the occurrences alleged in the Complaint, Stewart was incarcerated at SECC. He was housed in the administrative segregation unit for assaulting a staff member.

*May 19, 2017 Transfer*

On May 19, 2017, Stewart advised Defendants Brown and Wyatt that he felt threatened by his cellmate and would like to be placed in a different cell. He declared his cellmate an enemy, so as not to be celled with him.

Stewart alleges that Brown and Wyatt instructed him to "cuff up," at which time he placed his hands out the food port to comply. He states that Defendants twisted his wrist when placing the cuffs on his wrist, and informed Stewart it was necessary to twist his wrist because his thumbs needed to be facing upward. Stewart alleges that he notified Defendants

---

[1] The Court notes Stewart did not specifically respond to either of the Defendants' statements of uncontroverted material facts as is required by Local Rule 7-4.01(E). The MDOC Defendants argue in their Reply that their statement should, therefore, be deemed admitted. While it is true that "*pro se* litigants are not excused from compliance with relevant rules of the procedural and substantive law," *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983), the Court finds Stewart did, at least, attempt to controvert Defendants' statement by proffering a sworn "Declaration in Support of Plaintiff['s] Motion in Opposition to Defendants['] Summary Judgment." (Doc. 33.) The Court further notes that the MDOC Defendants did not fully comply with Local Rule 7-4.01(E), in that they did not file their Statement of Uncontroverted Material Facts as a separate document. Under these circumstances, the Court declines Defendants' invitation to punitively apply Local Rule 7-4.01(E).

[2] The Court's recitation of the facts is taken from Defendants' Statements of Uncontroverted Material Facts (Docs. 26, 52) and Plaintiffs' Response in Opposition to Defendants' Summary Judgment (Docs. 32, 33, 56), with any disputes noted.

3

Brown and Wyatt that the cuffs were too tight, to which they responded that policy required that the cuffs be placed on "skin-to-skin." Stewart states that he was then removed from the cell and handcuffed and shackled to an "opened barred steel bench in a sitting hog-tied stress position." Stewart also describes this position as a "four point restraint." On June 2, 2017, in his Offender Grievance form (Doc. 32-1), Stewart explained that he was "handcuffed and shackled to a steel bench." Defendants admit that they placed Stewart "on a restraint bench" while they found Stewart another cell.

Stewart alleges that, while on the bench, he immediately started to feel "tension" on his back, shoulders, arms, wrist, and legs. He stated that his wrist became swollen and his limbs became numb after approximately an hour. Stewart contends that he then informed Defendants Brown, Wyatt, and Gordon that he was experiencing pain and that his cuffs were too tight. He alleges that Defendant Gordon responded, "Deal with it," and Brown and Wyatt told him he should not have declared his cellmate an enemy. Stewart claims that he next notified Defendants that it felt as though his rectum was bleeding and requested a medical emergency, but his request was ignored. He alleges that he also requested to use the restroom, but Defendants told him he would get a chance to use the restroom when he was placed in a cell. As a result, Stewart claims that he was forced to urinate on himself.

Stewart alleges that he notified Defendant Cody Stanley of his medical complaints when Stanley was passing out medication, but Stanley refused to check his restraints or examine him. Instead, Stanley stated that Stewart should not have checked out of the cell, and then left. Stanley is a Licensed Practical Nurse ("LPN") employed by Corizon, LLC at ERDCC.

Stewart alleges that, after Defendants Brown and Wyatt removed him from the restraint bench, they noticed blood on the back of his pants from his rectum bleeding due to the pressure applied to it by the bench bar. He claims that Brown and Wyatt taunted him by stating that he "may need a cotex."

Stewart was on the restraint bench for a total of two hours, until Defendants found a new cell for him. Stewart remained in the new cell until May 22, 2017.

Defendant Stanley states that he does not recall the incident at issue, but states that if he did not examine Stewart, it was because Stewart never reported the rectal bleeding to him.

*May 22, 2017 Transfer*

On May 22, 2017, Stewart's new roommate declared Stewart an enemy and requested that he be placed in protective custody. As a result, Stewart was again removed from his cell and placed on the restraint bench for two hours.

Stewart alleges that, while on the restraint bench, he notified Defendant Gordon that he had pain and swelling in his wrist, and pain in his buttocks, back, legs, and shoulders. He alleges that, due to the stress put on his back and lack of back support, his lower back "popped out of place" making it difficult for him to sit straight without extreme pain. His rectum also started to bleed again. Stewart states that he reported these issues to Defendant Gordon, but Gordon did not notify medical staff and instead stated that Stewart was "going to sit on the bench til [his] ass looked like grilled meat." Stewart alleges that he was again denied a restroom break and had to urinate on himself. Stewart alleges that he sustained injuries to his wrist, resulting in spasms in his hand; injuries to his back and leg that affect his mobility, cause constant pain in his leg, and numbness of his foot; injury to his shoulder, resulting in difficulty with rotation; and injury to his anus, causing pain.

5

On May 23, 2017, Stewart was transferred to the Crossroads Correctional Center ("CRCC"). Stewart reported no medical complaints at this time.

## V.     MDOC Defendants' Motion

In their Motion for Summary Judgment, Defendants first argue that summary judgment is proper as to Defendant Precythe because the doctrine of *respondeat superior* cannot form the basis of an individual capacity claim, and sovereign immunity bars suit against her in her official capacity. They next argue that the CO Defendants are entitled to judgment as a matter of law, because Stewart cannot establish an excessive force or deliberate indifference claim. Defendants further argue that the CO Defendants are entitled to qualified immunity and official immunity; Stewart failed to exhaust his administrative remedies regarding his allegations about MDOC policies; and Stewart cannot prove any damages from his alleged injuries. (Doc. 26.) In support of their Motion, Defendants have attached excerpts of Stewart's deposition (Doc. 26-1), and the Affidavit of Defendant Hollie Dysinger Vandergriff (Doc. 26-2).

### 1.     Excessive Use of Force

Stewart argues that the CO Defendants used excessive force "sadistically and maliciously without provocation or the need to maintain or restore discipline," in violation of the Eighth Amendment prohibition of cruel and unusual punishment. (Doc. 2 at 8.) The essence of Stewart's claim is that he was subjected to an unconstitutional use of excessive force when he was placed on the restraint bench for two-hour periods while waiting for an available cell.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10

6

(1992).  *See also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment").  When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).  *See also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically").  The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, Stewart claims that the procedure by which Defendants handcuff and shackle inmates to the restraint bench while waiting for a cell inflicts unnecessary pain and suffering.  The first time this occurred, on May 19, 2017, Stewart alleges that he experienced "pain throughout his entire body specifically his shoulders, arms, wrist, legs, back and ankles." (Doc. 2 at 5.)  Stewart claims that he notified Defendants that his cuffs were on too tight, that he was in pain, and that his rectum felt as if it were bleeding, but Defendants told him he should not have declared his cellmate an enemy and to "just deal with it" until they found him a cell.  *Id.*  Additionally, Stewart alleges that Defendants denied him a restroom break, which resulted in him urinating on himself.  *Id.* at 6.  Upon being removed from the restraint bench, Stewart stated that Defendants noticed blood on the back of his pants and taunted him by stating "you may need a Cotex." *Id.* at 6.  On the second occasion, May 22, 2017, Stewart

7

was again placed on the restraint bench after a cellmate reported that he "feared for his safety." *Id.* at 7.  When Stewart asked a CO why he was being placed on the restraint bench, Stewart alleges the CO responded, "you guys want to check out of [your] cell and give us a hard time so I'm going to give y'all a hard time." *Id.*  Stewart claims that he notified a CO that his wrist was swollen, and that his wrist, buttocks, back legs, and shoulders hurt.  He states that his rectum began to bleed after about one hour. *Id.*  Stewart alleges that he was denied restroom breaks, which resulted in him urinating on himself again. *Id.*  It is undisputed that Stewart was on the restraint bench for two hours on each occasion.

Stewart could also be understood to claim he was subjected to unconstitutional conditions of confinement when he was held on the restraint bench for two hours without restroom breaks.  To state a plausible Eighth Amendment conditions-of-confinement claim, plaintiff must demonstrate both an objective and a subjective element.  To satisfy the objective element, he must demonstrate he suffered a deprivation that was sufficiently serious to deprive him of the minimal civilized measures of life's necessities, or create a substantial risk of serious harm to his health or safety.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hamner v. Burls,* 937 F.3d 1171, 1178 (8th Cir. 2019).  The duration of the exposure to the conditions and the harm suffered are key facts in determining whether this element has been satisfied.  *Tokar v. Armontrout*, 97 F.3d 1078, 1082 (8th Cir. 1996); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994).  To satisfy the subjective element, plaintiff must demonstrate that the defendant actually knew of, but deliberately disregarded, the risk of harm posed by the deprivation.  *Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

The only testimony Defendants have submitted on their own behalf is the Affidavit of Defendant Dysinger.  Defendant Dysinger stated that she was working at SECC in May 2017 when Stewart was an inmate at SECC.  Her testimony regarding the alleged excessive force incidents consists of the following statement: "When a prisoner wants to transfer cells, Missouri Department of Corrections ("MDOC") policy dictates that the prisoner be removed from his cell and restrained until a new cell is found for them.  Such transfers are done to ensure prisoner safety."  (Doc. 26-2 at p. 1.)  Despite Defendant Dysinger's reference to MDOC policy, Defendants have not submitted the policy.  Defendant Dysinger offers no testimony regarding the specific incidents involving Stewart.  None of the other CO Defendants have offered testimony.

Although Defendants have submitted excerpts of Stewart's deposition, these excerpts do not address any of the events that occurred while Stewart was restrained on the restraint bench.  Instead, they cite Stewart's testimony to support the propositions that he was "placed…on a restraint bench" on May 19, 2017 and "was placed onto the restraint bench again" on May 22, 2017, while they found another cell for Stewart.  Notably, Stewart testified that he was restrained in a "sitting hog-tie position."  (Doc. 26-1 at p. 5.)  Defendants, however, did not submit the portion of Stewart's deposition testimony in which he provided a more detailed description of this position.  Defendants cite to Stewart's testimony to support the proposition that he "suffered no injuries when he was taken off the bench."  (Doc. 26 at 6.)  While it is true that Stewart testified the guards did not injure him when they *took him off the restraint bench*, he testified that he sustained injuries *while on the restraint bench* of which he advised the guards and the guards responded by ridiculing him.  (Doc. 26-1 at 7.)

9

Moreover, some of Defendants' alleged uncontroverted material facts are merely unsupported legal opinions.  For example, Defendants state, "The force used by Defendants Corrections Officers on Plaintiff was to keep MDOC personnel and Plaintiff safe," and "The force used on Plaintiff was reasonable under the circumstances and the minimum necessary." (Doc. 26 at p. 7.)  These statements fail to comply with Local Rule 4.01(E), which requires that the moving party state how each fact "is established by the record, with appropriate supporting citation(s)."

Defendants, relying on *Lockhart v. Reese*, No. 1:16CV63 SNLJ, 2018 WL 690989 (E.D. Mo. Feb. 2, 2018), argue that the Court has previously upheld the use of a restraint bench "such as one Plaintiff was placed on." (Doc. 26 at 11.)  In *Lockhart*, the plaintiff prisoner, who suffered from bipolar disorder, declared to SECC staff that he was homicidal and suicidal at the same time 11 or 12 other offenders in the same housing unit also declared they were homicidal.  Lockhart was placed on a restraint bench because there were not enough suicide cells.  He claimed that he was left on the restraint bench for 17 hours.  The Court[3] held that, "[i]n light of the extreme disruption to the prison that was caused by an *en masse* declaration of suicidal ideations, the placement of plaintiff on a restraint bench for an extended time cannot be considered an extreme deprivation that implicates constitutional rights." *Id.* at *4.  The Court explained that, "Plaintiff had indicated an intention to kill himself; defendants had nowhere safe to house plaintiff and many other similarly situated prisoners; the restraint bench was an adequate and effective short-term solution."  The Court

---

[3]Senior United States District Judge Stephen N. Limbaugh, Jr.

10

noted that the "short duration and benign nature of any discomfort that may have occurred does not rise to a constitutional violation." *Id.*

As Defendants acknowledge, the circumstances under which Lockhart was placed on the restraint bench were much different from this case. Specifically, unlike *Lockhart*, here there was no "extreme disruption to the prison that was caused by an *en masse* declaration of suicidal ideations." Additionally, Lockhart did not claim that he was restrained in a "hog tie" position, or that Defendants ignored his complaints of pain caused by his restraint. As such, the undersigned disagrees with Defendants' statement that the "nature of restraint and justification" in this case are no different than those in *Lockhart*. (Doc. 26 at 11.)

Stewart's allegations that Defendants "hog tied" him to a restraint bench for two hours for the purpose of inflicting unnecessary pain, ignored his complaints of pain while he was restrained, refused to allow him to use the restroom forcing him to urinate on himself, and taunted him about his alleged injuries remain unrefuted. Defendants have either failed to address these factual allegations at all or have responded to them with bare legal conclusions.

As previously set out, the core judicial inquiry when analyzing excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Jackson*, 866 F.3d at 974. Because Defendants failed to address Stewart's alleged facts regarding the method and circumstances of his restraint, the Court cannot determine whether the force applied was necessary or was applied maliciously and sadistically to cause harm. Thus, Defendants have not discharged their burden of establishing entitlement to judgment as a matter of law on Stewart's excessive use of force claim.

Similarly, Defendants have not demonstrated entitlement to qualified immunity. Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known. *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To resolve a government official's claim of qualified immunity, courts apply a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation.  *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing *Harlow*, 457 U.S. at 818).  "When an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and if the official has made a properly supported motion for summary judgment based on qualified immunity, the plaintiff 'must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive.'"  *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998)).

In the absence of any testimony whatsoever from any of the CO Defendants regarding their conduct and intent, the Court cannot say Defendants have made "a properly supported motion for summary judgment" and thus have not established that they are entitled to qualified immunity as a matter of law.  *See Burns*, 752 F.3d at 1139.

Defendants next argue that the doctrine of official immunity applies to any of Stewart's claims against the CO Defendants.  Official immunity is a Missouri doctrine that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008).  However, official immunity does not apply

12

to "discretionary acts done in bad faith or with malice." *Id.* "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 447 (Mo. banc 1986).

The CO Defendants are not entitled to official immunity.  First, official immunity is a Missouri doctrine and Stewart does not allege any state law claims.  Second, official immunity would not apply because Stewart alleges the CO Defendants acted with malice and Defendants have not offered any evidence regarding the CO Defendants' intent.

With regard to Stewart's MDOC transfer policy claim, Defendants have referred to such a policy but have not submitted the policy, nor have they otherwise provided any specific details regarding the policy.  For this reason, it cannot be determined whether Defendant Precythe is liable for authorizing this allegedly unconstitutional MDOC policy.

Defendants also argue that Stewart failed to properly exhaust his claim regarding MDOC policy in the grievances he filed regarding the incidents at issue, yet Defendants did not submit the grievances that Stewart filed.  The crux of Defendants' argument is that, because Stewart admitted in his deposition that he did not specifically refer to "policies" in his grievances regarding the alleged excessive use of force on the restraint bench, he is precluded from challenging MDOC policies in the instant action.

The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The exhaustion requirement is "mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85

13

(2006).  The excerpt of Stewart's deposition testimony submitted by Defendants reveals that Stewart filed grievances regarding the incidents at issue.  (Doc. 26-1 at 12-13.)  These grievances gave the MDOC a "fair and full opportunity to adjudicate" Stewart's claims related to restraint procedures upon inmate transfer requests.  *Woodford*, 548 U.S. at 90.  *See also Jones v. Engle*, No. 4:18 CV 984 RWS, 2020 WL 4732047, at *2 (E.D. Mo. Aug. 14, 2020) (finding the plaintiff exhausted administrative remedies despite not specifically addressing the wrongdoing of the defendant because the grievance gave the MDOC the opportunity to adjudicate the claims against the defendant).  Thus, Defendant Precythe has not demonstrated her entitlement to judgment as a  matter of law on Stewart's claim regarding MDOC policy.

Accordingly, the MDOC Defendants' Motion for Summary Judgment as to Stewart's excessive force claims is denied.

    **2.**     **Deliberate Indifference to Medical Needs**

Stewart also claims that the CO Defendants were deliberately indifferent to his serious medical needs.  Specifically, he argues that Defendants refused to obtain medical treatment for him despite his requests due to his rectal bleeding and pain from the tight handcuffs.  Stewart claims that he experienced nerve damage to his wrist, and injuries to his rectum, back, and shoulder.

In support of their Motion for Summary Judgment, the CO Defendants argue that they did not deny Stewart care, Stewart "was afforded the ability to file a health services request that would allow him to receive medical treatment," pursuant to "normal policy within MDOC facilities."  (Doc. 26 at 13.)  They further argue that they are "not qualified to make any medical determinations as to Plaintiff."  *Id.*  They conclude that there "was no delay or

14

denial of Plaintiff's medical services." *Id.*  The only evidence submitted by Defendants in support of their arguments is the Affidavit of Defendant Dysinger, in which she simply describes the general process by which inmates request medical care, and states that the CO Defendants were not qualified to make medical determinations.  (Doc. 26-2 at 1.)

"To establish a claim of deliberate indifference to serious medical needs under § 1983, [Plaintiff] must demonstrate that he suffered from an objectively serious medical need and that [the officials] actually new of but deliberately disregarded the need." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Id.* (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Under the subjective prong, "the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (emphasis in original). Deliberate indifference constitutes more than mere negligence.  *Farmer*, 511 U.S. at 835.  Generally, the actor manifests deliberate indifference by "'intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed.'"  *Krout*, 583 F.3d at 567 (quoting *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978, 983 (8th Cir. 2006)).

The Court finds that Defendants have failed to establish entitlement to judgment as a matter of law on Stewart's deliberate indifference to serious medical needs claim.  Defendants do not address Stewart's allegations that he complained to the CO Defendants of wrist pain due to tight handcuffs or rectal pain and bleeding due to his position on the

restraint bench.  Instead, Defendants only argue that Stewart was afforded the ability to file a health services request pursuant to MDOC policy.  Stewart clearly was not capable of completing a form while his hands were cuffed together behind his back and shackled to the restraint bench.  He instead completed this request sometime after he was removed from the restraint bench and taken to his cell.   Significantly, Defendants do not state, and they present no evidence that Stewart *ever received medical treatment* for his alleged injuries while at SECC.

Medical training was not required for Defendants to determine that an inmate bleeding from the rectum requires medical attention.  *See Williams v. Chandler*, 4:05CV00661 ERW, 2006 WL 2795382, at *6 (E.D. Mo. Sept. 27, 2006) ("this Court finds that even a lay person would recognize bleeding from the rectum and spitting up blood as requiring a doctor's attention").  Because Stewart's allegations regarding his rectal pain and bleeding remain unrefuted by Defendants, Stewart has established the presence of a serious medical need.  Stewart's allegations that the CO Defendants intentionally denied him access to medical care demonstrates the subjective component of his deliberate indifference claim.

Accordingly, the MDOC Defendants' Motion for Summary Judgment will be denied.

## VI. Defendant Stanley's Motion for Summary Judgment

Defendant Stanley argues that he is entitled to judgment as a matter of law because the undisputed evidence shows that Stewart had no objectively serious medical need and that Stanley was not deliberately indifferent to any medical need of which he was subjectively aware.  Stanley has provided a detailed summary of Stewart's institutional medical record, in addition to a copy of the medical records as exhibits. (Doc. 52-2.)  He has also attached as

16

an exhibit his own sworn declaration (Doc. 52-1) and excerpts of Stewart's deposition (Doc. 52-3).

In his separately filed Statement of Uncontroverted Material Facts, Defendant Stanley states that he does not personally recall the incident that forms the basis of Stewart's Complaint.  Stanley, however, states that he has never had an inmate on the restraint bench tell him he was bleeding from the rectum and not further examine him.  Stanley states that the protocol for checking restraints is every two hours when an offender is on the restraint bench or if requested by security.  He states that medical staff does not typically check an offender's restraints upon offender request because it is a security risk.  If an inmate was screaming out in pain from his restraints, Stanley indicates he would have checked them to ensure they were fitting properly if it was safe to do so.  Stanley states that, if he did not check Stewart's restraints, it was because Stanley was either not aware that Stewart was in pain, or it was a safety risk to check.

In support of his argument that Stewart had no objectively serious need, Defendant notes that the record evidence shows that his rectal bleeding was simply due to his long-standing hemorrhoids, for which he was treated with suppositories before he was placed on the restraint bench.  (Doc. 52-2 at pp. 428.)  Defendant states that Stewart complained of wrist pain and numbness prior to May 19, 2017, possibly from a prior restraint bench occurrence.  (Doc. 52-2 at p. 439.)  Similarly, Defendant notes that Stewart's back pain was caused by an old basketball injury in 2005, and was treated with ibuprofen and Tylenol.  *Id.* at pp. 385, 393, 458-62, 499-502, 504-05, 516-18.

In Response, Stewart has filed a Declaration in Opposition to Defendant Stanley's Motion for Summary Judgment.  (Doc. 56.)  In this document, Stewart repeats the allegations

from his Complaint as follows: he was denied medical attention while he was restrained in a sitting hog tie position for several hours; while Defendant Stanley was making rounds in the unit, Stewart notified him that his cuffs were cutting off his circulation, that he was experiencing pain throughout his body, and that his rectum felt as though it was bleeding; and Defendant Stanley refused to check the restraints or render any medical assistance and instead stated "you shouldn't have checked out of the cell..." (Doc. 56 at p. 1.)  Defendant Stanley did not file a Reply.

      The Court finds that Defendant Stanley has failed to establish his entitlement to judgment as a matter of law.  Stanley argues that Stewart did not have a medical need either "diagnosed by a physician as requiring treatment" or "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." (Doc. 51 at 10.)  The undersigned disagrees.  The medical records submitted by Stanley reveal that Stewart had previously been diagnosed with hemorrhoids.  It is reasonable that Stewart's restraint on the bench as he describes would exacerbate this condition and cause bleeding.  Additionally, the Court has already found that bleeding from the rectum is so obvious that even a layperson would recognize the necessity for medical attention.

      As to the subjective component of Stewart's claim, Stewart alleges that he notified Defendant Stanley of his pain and bleeding rectum, and Defendant Stanley refused to render any medical assistance, instead stating that Stewart should not have checked out of his cell.  If Stewart's account of the event is true, then a reasonable jury could find Defendant Stanley was deliberately indifferent to Stewart's serious medical needs when he was told about Stewart's rectal bleeding and failed to render medical assistance.  Stanley does not

18

specifically deny Stewart's allegations but, rather, states that he "does not personally recall the incident." (Doc. 52-1 at 2.)

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

The Court finds that there is a genuine issue of material fact regarding whether Defendant Stanley was deliberately indifferent to Stewart's serious medical needs. Accordingly, Defendant Stanley's Motion for Summary Judgment will be denied.

**IT IS HEREBY ORDERED** that the MDOC Defendants' Motion for Summary Judgment (Doc. 26) is **denied.**

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendant Cody Stanley (Doc. 50) is **denied**.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of June, 2021.